# HART *v.* HINES.

APPELLATE PRACTICE; BILL OF EXCEPTIONS; EXECUTION; JUDI-
CIAL DISCRETION; JUDICIAL SALES; INADEQUACY OF PRICE.

1. An order of the lower court granting a motion by a judgment
debtor to vacate a marshal's sale of real estate under a writ of
execution for inadequacy of price, want of notice, etc., which
motion was supported and opposed by affidavits of the parties,
is not reviewable in this court on appeal, in the absence of a bill
of exceptions or anything in the record to show that the affi-
davits were used on the hearing or whether there was any oral
or other testimony introduced by the parties; *following*, Bar-
bour v. Hotel Co., 2 App. D. C. 174; Otterback v. Patch, 5 Id.
69; Lyon v. Ford, 7 Id. 314; Wilkins v. Hillman, 8 Id. 469.

2. Such action by a trial court is largely within its equitable discre-
tion when exercised during the same term in which the writ
of execution issued; and equitable doctrines will apply
in the determination of whether or not the sale should be
vacated.

3. Where property worth $1,000 or $1,200 is sold at a marshal's sale
for $145, the price is so grossly inadequate as to shock the con-
science and will justify the trial court in vacating the sale,
especially where there are other circumstances against its
fairness.

4. When several distinct parcels or lots of land are to be sold under
execution it is the duty of the officer to offer them for sale
separately, so that competition may be increased and no more
property sold than necessary to satisfy the execution; and this
rule obtains where three different parcels large enough for
subdivision into two ordinary city lots, are contiguous to each
other and are capable of being described by metes and bounds
as one lot. The lot should be subdivided before sale.

5. The right of a judgment debtor to have an execution sale of his
real estate vacated for fraud or irregularity is not affected by
the execution and delivery by the marshal or sheriff to the
purchaser at such sale of a deed of the property before mak-
ing a return of the writ, especially where the judgment
creditor is the purchaser.

No. 686. Submitted February 10, 1897. Decided March 1, 1897.

HEARING on an appeal from an order of the court below
vacating a sale made under a writ of execution. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from an order of the Supreme Court of the District of Columbia, vacating a sale made under a writ of execution issued from said court.

On December 16, 1889, the appellant, William L. Hart, as plaintiff, obtained judgment against the appellee, Paul A. Hines, before a justice of the peace for this District, for the sum of $72 and costs. On May 8, 1891, under the provisions of section 1022, of the Revised Statutes for the District, he caused the judgment to be filed in the office of the clerk of the Supreme Court of the District. On February 28, 1896, he caused a writ of *scire facias* to be issued to revive the judgment; and the writ was returned *"nihil."* On April 10, 1896, he caused an *alias* writ of *scire facias* to be issued, which in like manner was returned *"nihil."* In pursuance of these two writs, and the returns thereon, the appellant, Hart, on May 9, 1896, procured a judgment of *"fiat"* to be rendered by the court, and on May 12, 1896, there was a writ of *fieri facias* issued upon this judgment and placed in the hands of the marshal.

The marshal, on May 14, 1896, levied on "part of lots 4, 7 and 8, in square 715," in this city, having a frontage of 45 feet 6 inches on Delaware avenue, but otherwise of very irregular shape, with seven boundary lines of unequal length, varying from 70 feet on one side to 133 feet 8 inches in two lines on the other, and comprising about 4,000 or 4,500 square feet. By the appraisers, summoned by the marshal for the purpose according to law, this property was appraised at $1,600.

It was then advertised by the marshal that he would sell at public auction in front of the court house door the right, title, claim and interest of the appellee Hines in and to the property levied on; and, in accordance with his advertisement, that officer, on June 13, 1896, sold to Aaron Strauss, one of the appellants, for the sum of $145, and on

the following day executed and delivered to Strauss a deed of conveyance of the property. The sum of $145, for which the property was sold, did not realize enough to satisfy the judgment after the payment of the costs and expenses of sale: there was still a small residue left unsatisfied.

From affidavits filed in the cause and constituting part of the record before us, it appears that before the sale the appellant Strauss had become the owner of the judgment or had acquired the control of it by some arrangement with Hart; that at the time of the sale and during the whole of the year 1896 down to the 3d day of September of that year, the appellee Hines, the judgment debtor, was a nonresident of the District of Columbia, and knew nothing of the proceedings had against him and his property; and that the marshal's sale was conducted, as such sales usually are, with little or no competition. There are allegations of a fraudulent purpose on the part of Strauss in the manipulation of the judgment so as to enable him to get the property of Hines into his hands; but these allegations are denied by Strauss. It is plain, however, from the sequel that Strauss was more desirous to get the property than to procure payment of the judgment.

It appears further that the interest of Hines in the property in question was derived to him from his father, one Michael Hines, who had died some time after July 3, 1890, leaving a will of that date, by which he had disposed of this property; that in and by this will a life estate in the property had been devised to the testator's wife, the mother of the appellee, a lady about 68 years of age at the time of the sale; and that there was a remainder in fee simple devised to the appellee, with a clause superadded that, in the event of his death "without heirs of his body," the property should go to a daughter of the testator in fee simple.

Singularly enough this will was introduced into the record by the appellent Strauss, who annexed a copy of it to an affidavit filed by him in the case; and it seems to have

been used for the purpose of depreciating the value of the
appellee's interest. All the affidavits filed on behalf of the
appellants with reference to the value of the appellee's in-
terest regard that interest as no more than nominal, in view
of the provisions of the will, and also in view of the inchoate
right of dower existing in the wife of the appellee. One of
these affidavits was made by one of the appraisers sum-
moned by the marshal to make the appraisement of the
property after the levy, and who was also, it seems, the
auctioneer employed by the marshal to make the sale. In
it he says that the appraisement of $1,600 represents the
entire fee simple value of the estate free of all incum-
brances; but that the interest of the appellee, Paul Hines,
as disclosed by the will under which he was said to derive
title, being also subject to a life interest and the dower
rights of his wife, would not bring more than the $145
realized at the marshal's sale.

Affidavits introduced by the appellee represent the prop-
erty to be worth about $2,500 or $3,000.

On September 22, 1896, the appellee Hines filed a motion
to vacate the sale on the ground of gross inadequacy of
price, want of notice on his own part, failure of the marshal
or his auctioneer to describe adequately the amount of the
appellee's interest, and want of competition at the sale; and
he supported his motion by several affidavits. The appel-
lants filed affidavits in opposition to the motion.

On October 5, 1896, the court made an order vacating
the sale, upon condition that the appellee should pay into
the registry of the court the amount of the debt, interest and
costs to the date of sale, the expenses of sale, the marshal's
commissions, and interest on the aggregate sum from the
day of sale to the date of the order.

The appellee immediately deposited in court the sum of
$200, which is conceded to be more than sufficient to cover
the payment required by the court. But this money the
parties on the other side refused to receive, and the appel-

10 Ct. App.—25

lant Hart first, and on ·the next day Hart and Strauss jointly, entered an appeal to this court from the order vacating the sale.

It may be added that all the proceedings here recited from the rendition of the judgment of *fiat* on May 9, 1896, down to and including the order appealed from, took place during the April term of the Circuit Court branch of the Supreme Court of the District of Columbia, which began on Tuesday, April 7, 1896, and ended with the commencement of another term on Tuesday, October 6, 1896.

*Messrs. Mackall* and *Maedel* for the appellants:

1. Inadequacy of price, however great, is not *per se*, a ground for setting aside a sale of land made under execution.    *Reed* v. *Brooks*, 3 Litt. (Ky.) 127 ; *Greenup* v. *Stoker*, 12 Ill. 26.    In this latter case the land was said to be worth $800 and sold for $10.    See also *Duncan* v. *Sanders*, 50 Ill. 475 ; *Draine* v. *Smelzer*, 15 Ala. 423.

Fraud in judicial sales will not be presumed from insufficient circumstances, but must be affirmatively shown. Mere inadequacy of price will not suffice to set aside a sheriff's sale, where the transaction is shown to have been honest and free from fraud.    *Wallace* v. *Berger*, 25 Iowa, 456 ; *Craig* v. *Garnett's Admrs.*, 9 Bush, 100 ; *Nelson* v. *Brown*, 23 Mo. 13 ; *Comstock* v. *Purple*, 49 Ill. 167 ; *McMullen* v. *Gable*, 47 Ill. 71 ; *Agricultural Assn.* v. *Brewster*, 51 Tex. 257 ; *Cushwa* v. *Cushwa*, 5 Md. 55.

The only test of the value of property at a forced sale is what it will bring.    *Irby* v. *Irby*, 11 Lea. (Tenn.) 165.    The sheriff is not, like an auctioneer, the agent of both parties, but of the· law, and is presumed, in the absence of proof to the contrary, to have acted strictly according to the mandate of his writ.    *Weidler* v. *Bank*, 11 S. & R. 134.

After the acknowledgment of a sheriff's deed, the sheriff's sale will not be set aside for mere inadequacy of price. There must be a point of time when irregularities are cured,

and the law fixes the acknowledgment of the sheriff's deed as that time. Were this rule to be relaxed, titles might be imperiled. *Cooper* v. *Wilson*, 96 Pa. St. 409; *Evans* v. *Maury*, 112 Pa. St. 300.

*Mr. Geo. E. Hamilton* and *Mr. M. J. Colbert* for the appellee :

1. It is true, ordinarily, that mere inadequacy of price will not furnish sufficient reason for setting aside a judicial sale, unless in addition to the inadequacy of price there is some irregularity or fraud in the transaction. But the inadequacy of price may be so gross as of itself to raise a presumption of fraud. Rorer on Judicial Sales, 233; *Cohen* v. *Wagner*, 6 Gill, 236 ; *House* v. *Walker*, 4 Md. Chan. 62 ; *Warfield* v. *Ross*, 38 Md. 85 ; *Glenn* v. *Clapp*, 11 Gill & J. 9 ; *Eberhart* v. *Gilchrist*, 11 N. J. Eq. 167. In *Cummins* v. *Little*, 16 N. J. Eq. 48, it was held that where the inadequacy is so great as to shock the conscience that fact alone would be sufficient to set aside the sale, and Chancellor Kent so held in the case of *Tiernan* v. *Wilson*, 6 Johns. Chan. 411. To the same effect are *Dickerman* v. *Burgess*, 20 Ill. 267 ; *Thomas* v. *Hebenstreit*, 68 Ill. 115; *West et al.* v. *Davis*, 4 McLean, 241 ; *Tripp* v. *Cook*, 26 Wendell, 142 ; *Cranston* v. *Johnston*, 3 Ves. Jr. 170.

Whatever may be the rule in some of the States the question ought to be regarded as settled in this jurisdiction by the decision of the Supreme Court of the United States in the case of *Graffam* v. *Burgess*, 117 U. S. 180, where the court says: "If the inadequacy of price paid for the purchase of real estate at an execution sale be so gross as to shock the conscience, the party injured will be permitted to redeem." *Byers* v. *Surget*, 19 How. 303; *Schroeder* v. *Young*, 161 U. S. 334.

2. A court of law has the power to set aside a sale made under its process. Upon this point the authorities are uniform. 12 Am. & Eng. Encyc. L., p. 235, and cases there

cited. The power over its own process is possessed by all courts. Such power is a species of equitable jurisdiction that is inherent in courts of law as well as those of equity. *Bank* v. *Flagg*, 31 Ill. 290; Rorer on Judicial Sales, p. 404; *Draine* v. *Smelser*, 15 Ala. 423.

The mere fact that the sheriff or marshal has executed a deed to the purchaser can make no difference, except where rights of innocent third parties have attached. In the case of *Nelson* v. *Brown*, 23 Mo. 13, it was held that even after the delivery of the deed to the purchaser at an execution sale, the court of law has power to set aside the sale for fraud or irregularity. The true rule is stated in Rorer on Judicial Sales, 404, where it is said : "The application to set aside a sale should ordinarily be made first by motion to the same court from which the process of execution issued, and it must be made in a reasonable time." See also *Hay* v. *Baugh*, 77 Ill. 500.

Mr. Justice MORRIS delivered the opinion of the Court:

1. It is not quite apparent to us how we can properly review the order appealed from in this case without a bill of exceptions or some equivalent therefor. There is no bill of exceptions in the record; nor is there anything to show definitely what the testimony was upon which the order in question was based. We find in the printed transcript before us a number of affidavits on each side, but nothing to show that these affidavits were used at the hearing, or whether there was any oral or other testimony introduced by either party. The order appealed from makes no reference whatever to the affidavits, and does not purport to be based upon it.

It is true that the argument before us was conducted upon the theory that these affidavits constituted the whole testimony in the case; and yet reference was repeatedly made to matters not contained in these affidavits. But there is no agreement of parties or of counsel that these affi-

davits were the testimony upon which the case was decided in the court below; and there is no certificate of that court as to what took place before it.

A battle of affidavits, even if it appeared conclusively that they were the whole testimony in the cause, is not a satisfactory mode for the determination of issues intended to be presented to an appellate tribunal, however necessary or proper they may be in the trial court. They need the essential element and crucial test of cross-examination. They present more frequently the ingenious manipulation of counsel than the candid testimony of witnesses. It may be that, in the appeals provided by the act of Congress creating this court which are allowed to be taken from certain interlocutory orders of the Supreme Court of the District, there is no other mode of determining the propriety of the orders appealed from than by the consideration of the same affidavits that were before that court, although even then it should in some way definitely appear that upon such affidavits the orders appealed from were based. But the appeal in the case before us purports to be taken as from a final order of the court below; and that can only be heard by us, in accordance with the course of the common law, by the means of a bill of exceptions. This is in accordance with the repeated decisions of this court, as well as with the unanimous decisions of all other courts in causes at common law, in the absence of special statutory provision to the contrary. See *Otterback* v. *Patch,* 5 App. D. C. 69; *Lyon* v. *Ford,* 7 App. D. C. 314; *Barbour* v. *Paige Hotel Co.,* 2 App. D. C. 174; *Wilkins* v. *Hillman,* 8 App. D. C. 469.

In the case of *Barbour* v. *Paige Hotel Co.,* which was a case of attachment, and where it was held that, under the special provisions of the statute, a formal bill of exceptions was not necessary, this court said, recognizing the general rule: "It is certainly true that in cases at common law, where there has been trial of an issue of fact, the evidence,

whether written or oral, does not become part of the record unless made so by bill of exceptions or agreed statement."

In the case of *Lyon* v. *Ford*, which arose upon proceedings in *scire facias*, the principle of which is entirely applicable to the present case, we said:

"One of the most usual pleas in either case would be that of *nul tiel record;* and that plea would raise an issue of fact, although triable by the court and not by a jury. Being an issue of fact, and not an issue of law, there is no mode known to our law whereby the action of the trial court in regard to it can be reviewed in an appellate court, except by means of a bill of exceptions. While we might know what record ought to have been offered in support of the affirmative side of the issue, we cannot know what record was actually produced, or whether the plaintiff did not make default and fail to produce any record. We cannot assume that everything was done in a trial before a trial court that should naturally have been done. We can only know properly what happened in such cases by the certificate of the trial judge appended to a bill of exception."

And in the case of *Wilkins* v. *Hillman*, which was a case of attachment, we said:

"Undoubtedly the proper mode for bringing up a case of this kind for review is by bill of exceptions. . . . The question to be determined in cases like the present is usually a single issue of fact. But when it is desired to have the adjudication of the trial justice on that question reviewed in this court, it is proper that it should be brought before us in the mode usual in the trial of causes at the common law by requests for rulings upon the testimony presented to the trial justice upon the conclusion of that testimony, exception then and there taken to the ruling, and such exception in due time thereafter fashioned into a formal bill of exceptions purporting to have been taken at the time of the trial, as in other cases."

In view of these cases, which unquestionably express the rule and the practice of the common law, it is quite clear that there is no record before us in this case upon which we can properly review the order of the trial justice.

2. But even if we assume that the record before us might be regarded as an agreed statement, dispensing with a bill of exceptions, we find no reason to disturb the decision in this case. In a matter so largely appealing to the equitable discretion of the trial court, and under such circumstances as those here apparent, it should be made very clear to an appellate tribunal that the order appealed from is erroneous to induce the reversal of such order. There is no such clear indication of error. On the contrary, it would seem that the trial court was entirely right in the premises.

What Mr. Justice Bradley, speaking for the Supreme Court of the United States, in the case of *Graffam* v. *Burgess*, 117 U. S. 180, 186, 194, said in his usual incisive manner, is quite applicable to the present case. He said:

"It is insisted that the proceedings were all conducted according to the forms of law. Very likely. Some of the most atrocious frauds are committed in that way. Indeed, the greater the fraud intended, the more particular the parties to it often are to proceed according to the strictest forms of law. . . . The rule has become almost universal, that a sale will not be set aside for inadequacy of price, unless the inadequacy be so great as to shock the conscience, or unless there be additional circumstances against its fairness (citing numerous cases). From the cases here cited we draw the general conclusion that, if the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property, or party interested in it, has been for any other reason misled or surprised, then the sale will be regarded as fraudulent and void, or the party injured will be permitted to redeem the property sold. Great inade-

quacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud.    .    .    .

"Mr. Kerr, in his treatise on Fraud and Mistake, says: 'Inadequacy of consideration, if it be of so gross a nature as to amount in itself to conclusive and decisive evidence of fraud, is ground for cancelling the transaction.' Kerr on Fraud (Amer. Ed.), 186. Chancellor Desaussure, in the case of *Butler* v. *Haskell*, 4 Desaussure, 651, 697, on the same subject, says: 'I consider the result of the great body of the cases to be, that wherever the court perceives that a sale of property has been made at a grossly inadequate price, such as would shock a correct mind, this inadequacy furnishes a strong, and in general a conclusive, presumption, though there be no direct proof of fraud, that an undue advantage has been taken of the ignorance, the weakness, or the distress and necessity of the vendor; and this imposes on the purchaser a necessity to remove this violent presumption by the clearest evidence of the fairness of his conduct.'

"It is true that these observations, both of Mr. Kerr and Chancellor Desaussure, were made in reference to private sales between parties and do not strictly apply to judicial sales. But they show that great inadequacy of price is a circumstance which a court of equity will always regard with suspicion, unless it appears by the circumstances of the case, or by evidence, that it was no fault of the buyer."

The case of *Graffam* v. *Burgess* was a proceeding in equity; but its doctrine is entirely applicable to proceedings at common law where the court acts in the exercise of its equitable discretion and its control over its own process, which it should never permit to be used unnecessarily and wantonly to the injury of any one. And that the process of the court, especially during the term at which the judgment was rendered, is within its control, and subject for good cause to be amended, modified, or recalled, is beyond reasonable question. For there is inherent in every court

a power to supervise the conduct of its officers and the execution of its judgments and process. *Griffin* v. *Thompson,* 2 How. 244.

That there was gross inadequacy of price in this case, sufficient to shock the conscience, is too plain to need any argument to show it. At the very lowest appraisement the interest of the appellee in the property sought to be sold was worth not less than $1,000 or $1,200; and the preponderance of testimony would indicate a much greater value. This interest was sold for the paltry sum of $145. Of course, we do not take into consideration the alleged inchoate dower interest of the appellee's wife, if such there be, which is not shown; nor do we regard in the estimate the void devise over contingent upon indefinite failure of issue on the part of the appellee; for that can have no part in the consideration. If that devise entered into the marshal's sale in such manner as to affect the result, as would seem to have been the case and to have been intended by the appellants with the view of affecting the result, that circumstance was amply sufficient, if additional circumstance be needed, in connection with the gross inadequacy of price, to vitiate the sale.

But this is not the only circumstance deserving of consideration. Not much consideration, probably, is due to the judgment debtor who for years manifested no purpose to satisfy the just demand against him, notwithstanding that his property was amply sufficient for the purpose. Nor is it, perhaps, a matter of great importance that the two appellants entered into a speculative arrangement with each other, of which the circumstances leave no doubt, to appropriate the appellee's property to themselves, by its sale at a sacrifice, under a writ of execution. But in the enforcement of that writ a well established rule of law was disregarded.

Levy was made on three several and distinct lots, or on three several and distinct parts of several lots, any one of

which would have been sufficient to satisfy the judgment.
Yet they were sold in bulk as one piece, for a nominal sum,
It is well settled law that when several distinct parcels or
lots of land are to be sold under execution, it is the duty of
the officer to offer them for sale separately, so that competi-
tion may be increased, and no more property be sold than
necessary to satisfy the execution. *Tiernan* v. *Wilson,* 6 John.
Ch. 411; *Jackson* v. *Newton,* 18 John. 355; *Johnson* v. *Garrett,*
1 C. E. Green (N. J.) 31; Rorer on Judicial Sales, Secs. 81,
730; Freeman on Executions, Sec. 206; 12 Am. & Eng.
Encyc. L., Title, Judicial Sales.

Nor does the fact that the three different parcels were
contiguous to each other and were capable of being de-
scribed by metes and bounds as one lot, and were in fact so
described in the levy and the advertisement of sale, and as
such sold in pursuance of the advertisement, aid the matter
in any manner. It is plain that, even with the specific de-
scription by metes and bounds thus given, the lot was large
enough to be subdivided, and should have been subdivided
before sale. It was more than sufficient for two ordinary
city lots. If sales under execution at law are to be sus-
tained as muniments of title, the officer making such sales
must use reasonable discretion in their conduct, and must
not unnecessarily sacrifice the interest of the judgment
debtor while satisfying the just demands of the creditor.
The perfunctory manner in which such sales have some-
times been conducted, cannot be commended.

We attach no importance to the fact that a deed was exe-
cuted and delivered by the marshal to the purchaser in this
case. Under other circumstances and other conditions such
fact might be exceedingly important. Titles pass by deeds,
and rights thereby become vested; and vested rights should
not lightly be interfered with.

But it is not in the power of a purchaser at an execution
sale, by hastening to take his deed from the sheriff or mar-
shal, to defeat the right which we have seen to be inherent

in the court to control its process, especially when that purchaser is the plaintiff in the judgment, as he virtually is in the present case. Until the sheriff or marshal makes return of the writ and of the manner of his service of it, and the court is enabled to judge of the propriety of such service, the debtor cannot be barred of his right of objection and to have the sale vacated on the ground of irregularity. It is only required of him that he should act promptly before any rights of innocent parties have intervened. See Am. and Eng. Encyc. of L. (1st Ed.), Vol. 12, p. 235–239, and cases there cited.

In conclusion, we are of opinion that the order of the Supreme Court of the District of Columbia, vacating the sale in this case, should be *affirmed with costs. And it is so ordered.*